UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICK J. DEYOE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:20-CV-107-JCH |
| | ) |
| ROLLINGWOOD GP, LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Dismiss Defendant Rollingwood's Counterclaims, filed April 9, 2020. (ECF No. 25). The motion is fully briefed and ready for disposition.

**BACKGROUND**

On January 23, 2020, Plaintiffs Rick J. Deyoe ("Deyoe") and Realtex Development Corporation ("Realtex") (collectively "Plaintiffs") filed their Complaint in this matter against Defendants Rollingwood GP, LLC ("Rollingwood") and Gardner Capital, Inc. (ECF No. 1). Plaintiffs lodge claims for declaratory judgment, breach of several agreements between the parties, breach of fiduciary duties, tortious interference with contractual relations, unjust enrichment, alter ego liability, and action for an accounting.

On March 19, 2020, Rollingwood filed its Answer and Counterclaim against Deyoe and Realtex. (ECF No. 20). In its Counterclaim, Rollingwood asserts that prior to May, 2016, Realtex was the sole member of Rollingwood Place Development, LLC ("DevCo"). (Counterclaim, ¶ 5). Rollingwood claims that in early 2016, Plaintiffs sought financing for a low-income housing project in Georgia from Rollingwood. (*Id.*, ¶ 6; Compl., ¶ 8). Rollingwood allegedly agreed to participate

financially in the project.  (Counterclaim, ¶ 6).   As part of the transaction Rollingwood became Managing Member of DevCo, with a 70% interest therein, and Realtex's membership interest was reduced to 30%.  (*Id.*).

According to Rollingwood, the Amended and Restated Company Agreement of DevCo provides for payment of a development fee of $1,316,957 to Rollingwood Place, LP, in connection with the development and construction of a 72-unit affordable housing project in Georgia. (Counterclaim, ¶ 8).  Rollingwood asserts Rollingwood Place, LP was required to transfer and pay the development fee it received to DevCo.  (*Id.*).

Rollingwood asserts that in May, 2015, Rollingwood Place, LP received $329,239 as and for an advance payment on the development fee for the housing project.  (Counterclaim, ¶ 9). Rollingwood Place, LP transferred the $329,239 payment to DevCo, the sole member of which was Realtex.  (*Id.*).[1]

Rollingwood maintains that on October 10, 2016, prior to the completion of construction, the certification of project costs to the State of Georgia and project occupancy, Realtex was removed as a member of DevCo, and Deyoe was removed as a member of Rollingwood Place I, LLC ("GP"). (Counterclaim, ¶ 10).  Rollingwood claims the removals were for "cause", as defined in Section 9.2 of the respective Amended and Restated Company Agreements of DevCo and GP.  (*Id.*).[2] Rollingwood asserts that Realtex's removal as a member of DevCo eliminated any right of Realtex or Deyoe to the project development fee, and thus Rollingwood, as sole remaining member of DevCo, is entitled to receive the project's development fee, including the $329,239 advance.  (*Id.*, ¶¶ 11-13).

---

[1] Deyoe in turn was the sole member of Realtex.  (Counterclaim, ¶ 9).
[2] According to Rollingwood, Deyoe neglected to operate the development and construction of the project property, causing financial shortfalls in the construction and litigation, and further used project funds to pay other obligations of Deyoe unrelated to the project.  (Counterclaim, ¶ 10).

Based on these and other facts, in its Counterclaim Rollingwood asserts claims for breach of contract, unjust enrichment, constructive trust, fraud, and breach of fiduciary duty. (ECF No. 20). As noted above, Plaintiffs filed the instant Motion to Dismiss on April 9, 2020, seeking dismissal of Rollingwood's fraud and breach of fiduciary duty counterclaims. (ECF No. 25).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

**I.      Fraud (Count IV)**

In Count IV of its Counterclaim, Rollingwood alleges in part as follows:

29.     In connection with Deyoe's requests to Rollingwood in early 2016 to provide financing for the project, Deyoe provided specific representations as to the state of the project's financial affairs and as to the debts which were outstanding and owing with respect to the project for which the Partnership would be responsible. Deyoe

-3-

> identified some, but not all, of the outstanding debts, intentionally concealing and omitting others, in an effort to make the financial state of the project appear more favorable than it truly was.
>
> 30.    As the sole member of the entity controlling and running the project prior to Rollingwood agreeing to enter the project, Deyoe was in a superior position of knowledge and had an affirmative duty to disclose the true financial state of the project, including the project's true debts, to Rollingwood.
>
> 31.    Deyoe's representations to Rollingwood were false, incomplete, and/or omitted and concealed material information from Rollingwood such that Deyoe's representations were not truthful or complete.
>
> 32.     Deyoe intended Rollingwood to rely on the false and/or incomplete and untruthful representations, and Rollingwood justifiable [sic] and reasonably relied on these representations in deciding to enter the project, become a member of the partnership, and invest in the project.

(Counterclaim, ¶¶ 29-32).

In their Motion to Dismiss Plaintiffs claim that with these allegations, Rollingwood fails to satisfy Federal Rules of Civil Procedure Rule 9(b)'s particularity requirements.  Plaintiffs complain Rollingwood does not allege the specific debts that were intentionally concealed or omitted—neither the amounts nor the creditors, neglects to identify any affirmative representations made by Deyoe that allegedly were false, and fails to provide specific dates or locales of the alleged misdeeds.  (*See* Plaintiffs' Memorandum in Support of Motion to Dismiss Defendant Rollingwood's Counterclaims ("Plaintiffs' Memo in Support"), PP. 3-4).

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

> Under Rule 9(b), plaintiffs are not required to plead evidence, but only must identify the circumstances constituting the fraud such that defendants are apprised of the occasions on which and the circumstances under which they defrauded the plaintiffs.  Moreover, because many of the allegations concern matters which are peculiarly within the defendants' knowledge, the pleading standards are relaxed.

*Bastien v. R. Rowland & Co.*, No. 82-950-C, 1983 WL 1283, at *2 (E.D. Mo. Feb. 25, 1983).

Upon consideration, the Court finds Rollingwood's allegations are sufficient to survive dismissal. Count IV of its Counterclaim successfully identifies the "who, what, where, when, and how" of the alleged fraud: In connection with his request to Rollingwood in early 2016 to provide financing for the project, Deyoe identified some, but not all, of the outstanding debts, intentionally concealing and omitting others, in an effort to make the financial state of the project appear more favorable than it truly was. (Counterclaim, ¶ 29; *see also BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). Rollingwood further sets forth how Deyoe's actions damaged it, claiming that had it known the representations were false it would not have entered the project, and by so entering it was damaged in an amount in excess of $75,000. (Counterclaim, ¶¶ 34-35). These allegations provide Plaintiffs with sufficient factual material to respond, and so the Court will deny Plaintiffs' Motion to Dismiss Count IV of Rollingwood's Counterclaim. *See SLEC, LLC v. Ashley Energy, LLC*, No. 4:18-CV-1377 JAR, 2019 WL 7195343, at *11-12 (E.D. Mo. Dec. 26, 2019); *Thornton v. Pinnacle Foods Group LLC*, No. 4:16-CV-158 JAR, 2016 WL 4073713, at *4-5 (E.D. Mo. Aug. 1, 2016); *Brown v. Joiner Int'l, Inc.,* 523 F.Supp. 333, 335-36 (S.D. Ga. 1981).

**II.      Breach Of Fiduciary Duty (Count V Alternative)**

As noted above, in its Counterclaim Rollingwood asserts that on October 10, 2016, prior to the completion of construction, the certification of project costs to the State of Georgia and project occupancy, Realtex was removed as a member of DevCo, and Deyoe was removed as a member of GP. (Counterclaim, ¶ 10). Rollingwood alleges Realtex and Deyoe disputed the removals, but took no action to challenge them. (*Id.*, ¶ 38). Instead, Rollingwood claims Deyoe failed and refused to notify governmental authorities of his removal as a member of GP, and continued to receive official notices without notifying Rollingwood of the notices he received. (*Id.*, ¶ 39).

According to Rollingwood, in connection with 2018 real property taxes the McDuffie County Tax Commission conducted a re-assessment of the project's real property, and increased the *ad valorem* real property taxes on the project by $100,576.51. (Counterclaim, ¶ 40). Rollingwood maintains the Tax Commission sent the notice of re-assessment to Deyoe, but he failed and refused to notify Rollingwood or any other representative of Rollingwood Place, LP of the re-assessment within the time limit wherein a protest or appeal could be undertaken. (*Id.*, ¶¶ 41-42). As a result, Rollingwood claims it was forced to pay the additional $100,576.51 in taxes. (*Id.*, ¶ 42).

In Alternative Count V of its Counterclaim, labelled Breach of Fiduciary Duty, Rollingwood alleges as follows:

> 50.  To the extent that Deyoe asserts that his removal as a member of Rollingwood Place I, LLC on or about October, 2016 was void, ineffective and/or in breach of the company's Amended and Restated Company Agreement, Deyoe owed a fiduciary duty to Rollingwood to notify either Rollingwood or any other representative of Rollingwood Place, LP of the re-assessment within the time limit wherein a protest or appeal of the re-assessment could be undertaken.
>
> 51.  As a result of Deyoe's failure to so notify Rollingwood or any other representative of Rollingwood Place, LP, Rollingwood Place, LP and Rollingwood were forced to pay the additional $100,576.51 in taxes.
>
> 52.  Had Deyoe forwarded the notice to Rollingwood or to another representative of Rollingwood Place, LP, Rollingwood Place, LP would have been able to protest the substantial increase in real estate taxes. Deyoe's failure and refusal to so notify Rollingwood Place, LP removed all opportunity for Rollingwood Place, LP to challenge the substantial increase in real estate taxes.
>
> 53.  As a direct and proximate result of Deyoe's actions, Rollingwood was damaged in the amount of $100,576.51, plus interest, for the increased real estate taxes.

(Counterclaim, ¶¶ 50-53).

The elements of a breach of fiduciary duty claim under Georgia law[3] are "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *McConnell v. Dep't of Labor*, 814 S.E.2d 790, 800 (Ga. App. 2018) (internal quotation marks and citations omitted).  In their Motion to Dismiss Plaintiffs assert (a) that GP is a manager-managed limited liability company, as opposed to a member-managed one; (b) Rollingwood has been the sole managing member of GP since May, 2016; and thus (c) Deyoe owed no fiduciary duty to GP because pursuant to Georgia law, only managing members of manager-managed limited liability companies owe such duties. (Plaintiffs' Memo in Support, PP. 4-6).

As noted above, the first element that must be proved in order to support a claim for breach of fiduciary duty is the existence of a fiduciary duty.  Rollingwood claims in its Counterclaim that Deyoe owed a fiduciary duty to inform Rollingwood or any other representative of Rollingwood Place, LP of the re-assessment within the time limit to protest or appeal.  (Counterclaim, ¶ 50). Georgia law provides as follows, however:

> Except as otherwise provided in the articles of organization or a written operating agreement, a person who is a member of a limited liability company in which management is vested in one or more managers, and who is not a manager, shall have no duties to the limited liability company or to the other members solely by reason of acting in his or her capacity as a member.

*See* Ga. Code § 14-11-305(1).  "Because the plain language of OCGA § 14-11-305 provides that non-managing members in manager-managed LLCs owe no duties to the LLC or other members, we hold that non-managing members owe no fiduciary duties to the LLC or the other members." *Colquitt v. Buckhead Surgical Associates, LLC*, 831 S.E.2d 181, 186 (Ga. App. 2019) (internal quotation marks and citation omitted).

In its response, Rollingwood does not take issue with the foregoing.  Instead, it notes that "the operating agreements of both limited liability companies at issue herein provide specifically that all

---

[3] Rollingwood does not dispute Plaintiffs' claim that Georgia law governs the internal affairs of GP.

of the members (managing and non-managing) have duties to the Company and its members—the members shall not engage in 'gross or ordinary negligence materially and adversely affecting the Company,…or willful misconduct materially and adversely affecting the Company.'" (Rollingwood's Memorandum in Opposition to Motion to Dismiss Counterclaim, P. 5 (quoting Compl. Exhs. 1 and 2, Articles 3 and 9.2)).

While Plaintiffs forcefully assert that the provisions alluded to in Rollingwood's response do not equate to the placement of fiduciary obligations on Deyoe (in his role as a non-managing member), the Court finds it inappropriate to dismiss Alternative Count V at this time. Instead, the Court will permit discovery and further briefing on the issue raised in Plaintiffs' Motion to Dismiss. Plaintiffs remain free to renew their argument on summary judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss Defendant Rollingwood's Counterclaims (ECF No. 25) is **DENIED**.

Dated this   8th   Day of July, 2020.

                                                 \s\  Jean C. Hamilton
                                               UNITED STATES DISTRICT JUDGE